### CROWLEY v. STATE.

(Supreme Court, Appellate Division, Third Department.   January 6, 1904.)

**1. CANALS—LEAKAGE—DAMAGE TO LAND—EVIDENCE.**
    In a claim against the state for damages to claimant's land, alleged
    to have been caused by the leakage of water from a canal, evidence
    considered, and *held* to show that some damage was sustained.

Appeal from Court of Claims.

Claim by Jeremiah Crowley against the state of New York.   From a judgment dismissing the claim, claimant appeals.   Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

James C. Rogers, for appellant.

John Cunneen, Atty. Gen., and S. S. Taylor, Dep. Atty. Gen., for the State.

PARKER, P. J.   It seems to be conceded that the leak of which the claimant complains actually exists in the canal, and has so existed since 1897, when the state caused the towpath to be straightened; and there is no real dispute but that it so exists because of negligence on the part of the state.   There is a difference in the evidence as to the extent of the leak, the claimant making it as much as 10 quarts

every two minutes, and constantly running during the season of navigation, and the defendant's witnesses saying it was very little. It seems that the state, instead of trying to stop the leak itself, caused a trench to be dug along the foot of the bank where the leak came through some 2½ feet wide and 2 feet deep, upon claimant's land, to receive the water and lead it into another ditch running off easterly across the plaintiff's land, and which he had long ago made for another purpose. By so doing the state intended to prevent the water from injuring the claimant's land, and claims that it has done so. Such ditch was dug with the claimant's consent, but he claims that it has not prevented the water from doing him serious injury. The decision of the court below seems to be based upon the theory that, although the water does leak out of the canal owing either to the negligent construction thereof or the negligent omission to repair it, yet it flows into that ditch, and as a matter of fact does the claimant no harm. The claimant has 20 acres along the canal and between it and the Delaware & Hudson Railroad bank. It is a low-lying piece of land, consisting of muck from eight inches to two feet in depth over a hard clay subsoil impervious to water, particularly adapted to the raising of potatoes when it can be kept dry. His explanation is that the water which flows into the said ditch cannot sink through the clay bottom; that the ditch has a very slight grade, and is easily filled up with growing vegetation, so that the water does not readily flow through it; that hence it spreads over the hard clay bottom, and is absorbed by the muck land, which is thus constantly kept wet, and his crop of potatoes thereby ruined. His claim is that it so injured 7 acres of the 20 in each of the years 1899 and 1900, and reduced the crop thereon one-half, amounting in all to some $1,000 at market rates. It is true that no one testifies as to the condition of the soil on that seven acres in contradiction of the claimant, and no one contradicts his statement that not more than one-half a crop was taken therefrom, yet I cannot credit his statement that so large an extent as seven acres was affected by the water which he himself says leaked from the canal onto his premises. I cannot credit that the amount, even as he estimates it, was sufficient to have the effect that he states; and I do not think that the court of claims was obligated to accept as correct his estimate, either as to the amount of water or as to the amount of land injured. But it seems to me that, on the undisputed evidence, it is easy to understand that a strip of land along that ditch, so far as it extended on claimant's premises, was rendered wet, and unfit to produce a good crop of potatoes. To a certain extent the story is reasonable, and I do not know that we have the right, upon the evidence before us, to entirely reject the claimant's evidence as to the manner in which the water affected that muck land after it got into the ditch, and particularly if it stood there. The plaintiff is contradicted as to the amount of water that daily leaked onto his premises, but the evidence of those so contradicting him does not assume to give any estimate as to how much it was. They say it was a small amount. That conveys so little information that it hardly amounts to a contradiction. In all other respects the claimant's story is substantially uncontradicted. I am of the opinion that we have no right to entirely discredit his whole

statement, and hold that he has failed to prove any damage whatever resulting from the leakage which it is conceded exists there. It may be very difficult to determine just how much land was injuriously affected by the water, but under the evidence I do not know upon what theory we can say that none whatever was so affected. As long as the state permits the water to leak onto his premises, it should expect to pay for the annual damage caused thereby, and should be prepared to furnish some evidence of what the actual effect of such water is upon the land and the crops of the party upon whom it is so deliberately and constantly trespassing. I am of the opinion that, on the evidence, some damages should have been awarded to the claimant, and that an utter dismissal of his claim was error.

The judgment should be reversed, and a new trial granted.

Judgment reversed on law and facts, and new trial granted, with costs of this appeal to appellant. All concur.